Brian R. Barnhill, USB No. 7686
**OSBORNE & BARNHILL, P.C.**
11576 South State Street, Bldg 204
Draper, Utah 84020
Telephone: 801-571-2555
Facsimile: 801-571-9929

Attorney for Plaintiffs

---

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| PROFESSIONAL NURSE DEVELOPMENT, INC., a Utah corporation, ACADEMY OF NURSING, LLC., a Utah limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>MATT STOKER, IVY HALL ACADEMY OF NURSING, INC., a Utah corporation d/b/a ACADEMY OF NURSING DEVELOPMENT and ACADEMY OF NURSE DEVELOPMENT, and Does 1-5,<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, AND ORDER TO SHOW CAUSE *RE* PRELIMINARY INJUNCTION**<br><br>**2 02CV-0767  BSJ**<br><br>Civil No. _____<br><br>Judge _____ |

---

Plaintiff Professional Nurse Development, Inc. and Academy of Nursing, L.L.C., by and through its undersigned counsel, and respectfully submits the following memorandum in support of its *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction.

4

## FACTUAL BACKGROUND

### A. Preliminary Statements

In this action, Plaintiffs seek injunctive relief, damages (including punitive damages) and attorneys fees for acts of misappropriation of trade secrets, deceptive trade practices, interference with contractual, business, and economic relations, passing off, conversion, and unfair competition engaged in by Defendants in violation of the laws of the State of Utah, all as set forth in the complaint.

Defendants have infringed and misappropriated Plaintiffs' Copyrights and by using Plaintiffs' materials, programs, customer lists, and other proprietary information in the conduct of there business known as "Ivy Hall Nursing Academy" "Academy of Nursing Development" and "Academy of Nurse Development". Defendants have used and are using misappropriated and infringing materials in advertisements, marketing, programs, and competing products. Defendants have further engaged in deceptive trade practices, passing off of PND products as their own, and unfair competition. Lastly, Defendants have obtained confidential and proprietary information and materials which has been used to the great detriment and harm of Plaintiff.

Accordingly, Plaintiffs have moved this Court to enter a temporary Restraining Order and Order to Show Cause *re* Preliminary Injunction to prevent Defendants from the further use of proprietary materials, trade secrets and information or any colorable imitation, of such in their program, advertisements, publications, website, or any other activities that may serve to mislead or confuse the public, and/or irreparably damage the Plaintiff.

2

To halt Defendant's continued misappropriation, passing off, as well as the unfair and deceptive trade practices, and protect other intellectual property interests, and to preserve evidence of Defendant's misappropriations and other illegal acts, Plaintiff moves this Court *ex parte* for a temporary restraining order.

It is crucial that this relief be granted without notice to Defendants because the evidence of Defendant's misappropriations, infringements and violations can be easily destroyed. There is a substantial risk that, when notified in advance of proceedings to restrain misappropriation, Defendants will attempt to destroy, remove, erase, or hide misappropriated materials.

**B.     Factual Background**

### General Facts

Plaintiffs are in the business of providing education, career service placement, and financial aid to those seeking to enter the field of nursing. Plaintiffs have created and received Copyrights for the unique style in which they model their nursing program as well as for their materials. Some of Plaintiffs' hallmarks include their expedited nursing program and incorporated staffing program.

Defendants have infringed on Plaintiffs' copyrighted material. These infringements include, among others, verbatim copying from sales materials and websites as set forth in Plaintiffs' Complaint, including but not limited to the following examples:

   *a.*     *Plaintiffs Brochure:* "Q. Are my opportunities for employment in the nursing field good? A. Better than good - they are exceptional. Job demand is high and will only

continue to increase over the next 10 to 15 years. . . The Bureau of Labor Statistics projects that employment for RNs will grow faster than any other occupation between now and 2008. The current nursing shortage is so critical that companies have been established for the sole purpose of wooing nurses from one medical institution to another by offering them better salaries and benefits." See Exhibit 13A to Complaint.

*Defendants Brochure:* "Be a member of the highest growing profession in the nation! The Bureau of Labor Statistics projects that employment for RNs will grow faster than any other occupation between now and 2008." See Exhibit 13B to Complaint.

2nd *Defendant Handout*: "How Does The Future In Nursing Look? Incredible. Health care professionals, specifically RNs are in extremely high demand at this time and according to the Bureau of Labor Statistics, this demand is going to continually increase for the next 15 - 20 years. The job related news articles and headlines are flooded with articles specifically speaking about this shortage of nurses. The current shortage is so immense that Hospitals around the nation are resorting to the importation of foreign nurses offering huge sign on bonuses and starting salaries." See Exhibit 13C to Complaint.

b. *Plaintiffs' Brochure*: "Dramatically increase your income potential with your RN degree and do it around your work schedule." See Exhibit 14A to Complaint.

*Defendants Brochure*: "Dramatically increase your income potential with your

4

RN degree and do it around your work schedule." See Exhibit 14B to Complaint.

c.   *Plaintiffs' Mission Statement:* "It is the mission of The Academy of Nursing to open the doors wide to those students who are qualified and greatly desire to earn a diploma in nursing, and to provide those students who enter the doors the best training and support available in the State of Utah." See Exhibit 15A to Complaint.

*Defendants Enrollee Information Packet:* "There is an extreme shortage of health care professionals in the United States, particularly in Utah. Ivy Hall Academy of Nursing will address this problem by training . . . at the associate degree level using methods designed to provide maximum flexibility and efficiency for today's busy, nontraditional student." See Exhibit 15B to Complaint.

d.   *Plaintiff FAQ:* "Q. Who can enroll in The Academy of Nursing? A. Anyone with a high school diploma can enroll regardless of previous schooling or medical background." / "Q. How often will I need to attend class? A. For the most part you generally will attend one to two classes a week for 2 to 3 hours per class. Day and evening class schedules are provided to accommodate a student's work or busy family schedule." See Exhibit 16A to Complaint.

*Defendants FAQ.* "Anyone with a high school diploma can enroll in our programs. Our classes are set up in a convenient fashion so that students can enroll and begin classes at the beginning of each month." See Exhibit 16B to Complaint.

Large portions of Defendant's website and advertising fliers are verbatim copies of Plaintiffs' website and fliers. Further, Plaintiffs are informed and believe that Defendants have surreptitiously obtained Plaintiffs instructor outlines and lesson plans for use in their competing business.

## RELIEF SOUGHT

Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Defendants from the following illegal acts and practices:

    a.    Using any of Plaintiff's trade secrets, proprietary or confidential information (including written materials, manuals, lesson plans, graphs, methods, formulas, sayings, etc.) in any way, including but not limited to using it in any of Defendants manuals, programs, advertising, or other business activities;

    b.    Using any of Plaintiff's copyrighted program, documents, or other materials of any kind;

    c.    Contacting or soliciting Plaintiffs employees, clients or perspective clients through any means, and

    d.    Falsely advertising or communicating in any way that attributes Plaintiffs' products or services to Defendants.

If Defendants are allowed to continue to use Plaintiffs' products and programs and continue the actions alleged above, Plaintiffs will suffer great, immediate and irreparable damage

to its good will, business relations and future business efforts.

Defendants are continuing to engage in such wrongful conduct in violation of Plaintiffs' legal rights. Such actions, if they are allowed to continue, would render any judgment for damages issued by this Court inadequate and/or extremely difficult, if not impossible to calculate with any certainty.

Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction against the defendants.

## ARGUMENT

**PLAINTIFFS ARE ENTITLED TO AN IMMEDIATE TEMPORARY RESTRAINING ORDER, PROHIBITING DEFENDANTS FROM USING OR MISUSING PLAINTIFFS' ESTABLISHED TRADE SECRETS, OR ANY SIMILAR VARIATION THEREON, AND PROHIBITING FROM FURTHER UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES.**

**A.     Plaintiff should be granted an *Ex Parte* Temporary Restraining Order.**

Plaintiffs are entitled to a temporary restraining order or preliminary injunction upon establishing that: (1) plaintiff will suffer irreparable harm unless the injunction issues; (2) the threatened injury to plaintiff outweighs any damage to the defendants; (3) the injunction will not be adverse to the public interest; and (4) there is a substantial likelihood that plaintiff will prevail on the merits or the case presents serious issues on the merits which should be the subject of further litigation. Utah Rules of Civil Procedure 65A(e).

The Application of these standards to the facts of this case demonstrates that a temporary restraining order should issue.

### 1. Plaintiff is Suffering Irreparable Harm

It is well-settled that the loss of business and goodwill may constitute irreparable harm appropriately addressed by injunction. *Hunsaker v. Kersh*, 991 P.2d 67 (Utah 1999). In addition, Utah Code Ann. 13-24-3(1), of the Uniform Trade Secrets Act specifically provides that "[a]ctual or <u>threatened</u> misappropriation may be enjoined." (Emphasis added). In this case, Plaintiffs have shown a substantial likelihood of prevailing on the merits of its claims far misappropriation of trade secrets, unfair and deceptive trade practices, and the passing off of Plaintiffs' product as that of the Defendants. In *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 427-28 (Utah 1983), the Utah Supreme Court defined irreparable injury, in the context of injunctive relief, as follows:

> Wrongs of a repeated and continuing character, or which occasion damages that are estimated only by conjecture, and not by any accurate standard, are included.... "Irreparable injury" justifying an injunction is that which cannot be adequately compensated in damages or far which damages cannot be compensable in money.

Similarly, in *Anderson v. Granite School Dist*, 17 Utah 2d 405, 413 P.2d 597, 599 (1966), the court classified injunctive relief as "an anticipatory remedy purposed to *prevent* the perpetration of a *threatened* wrong or to *compel the cessation of a continuing one*. Furthermore, it is an instrument of equity to be invoked where the party has no adequate legal remedy. Thus,

8

Plaintiffs have established the element of irreparable harm, and a temporary restraining order should therefore issue.

## 2. The Balance of Equities Favors the Issuance of the Requested Injunctive Relief

The temporary restraining order will do nothing more that prohibit Defendants from making additional illegal copies of Plaintiffs materials, contacting Plaintiffs customers and prevent Defendants from destroying evidence pertaining to their illegal conduct. Thus, the requested injunctive relief seeks nothing more than to require Defendants to comply with the Trade Secrets Act, and to preserve the *status quo* with respect to the evidence of Defendants' misappropriations and deceptive and unfair trade practices. The imposition on Defendants' legitimate business activities will be minimal. On the other hand, Plaintiffs are suffering irreparable harm. Accordingly, Plaintiffs have established that the threatened injury (the continued use and misappropriation of Plaintiffs' trade secrets) outweighs any possible damage that the requested injunctive relief might cause to Defendants.

## 3. The Requested Injunctive Relief is in the Public Interest

The public interest can only be served by upholding trade secret and copyright protections. Preventing Defendants from flouting the public policy underlying state unfair and deceptive practices law, as well as the Uniform Trade Secrets Act, is a goal that furthers the

public's interest in protecting business investment, proprietary property and in enforcing law. With further regard to the trade secret aspects, the Utah Uniform Trade Secrets Act articulates a clear public policy of protecting trade secret information from disclosure and misappropriation. Pursuant to Utah Code Ann. §13-24-3, as amended, a party may apply to a Court for an injunction on evidence that a trade secret of the Plaintiffs has been misappropriated, which injunction continues as long as the trade secret exists. This Uniform Act is similar in content to the majority of trade secrets legislation adopted by numerous other states. It is consistent with the general proposition that the scope of the trade secret definition is <u>very broad</u> and includes any information compiled for use in one's business, which breadth gives the person or company an opportunity to obtain an advantage over competitors without such information.

Pursuant to the Utah Uniform Trade Secrets Act, the Utah legislature has declared that it is in the best interest of the public to restrain or enjoin the use of such information, <u>even in the absence of specific contractual prohibitions against use</u>.

### 4. Plaintiff Has a Substantial Likelihood of Prevailing on the Merits of Its Claims

To establish the substantial likelihood that Plaintiffs will prevail on the merits of the claim for misappropriation of trade secrets, the Plaintiffs must show: (1) the existence of a trade secret; (2) efforts to protect the trade secret with employee under express or implied agreements limiting disclosure of the secret; and (3) Defendants' use of the secret injured or threatens to injure the company seeking to protect the trade secret. The Plaintiffs have made much more than

a prima facie showing with regard to the likelihood of success on these claims. First, it cannot be contradicted that Plaintiffs have "trade secrets" including, but not limited to "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Uniform Trade Secrets Act - UCA 13-24-2(4)).

To show a substantial likelihood of success on the merits of its claim that certain Defendants have used in its business practices Plaintiffs' trade secrets including but not limited to, customer information, instructor materials, Plaintiffs' resources and research used in staffing area medical centers, the Plaintiffs must show that reasonable steps were taken to safeguard and maintain the information as confidential. Plaintiffs have established that each of its employees and instructors are required to sign a non-compete and confidentiality agreement preventing the dissemination of trade secret and confidential information. Plaintiffs are informed and believe that Defendants obtained Plaintiffs' trade secret information through employee(s) in violation of the non-compete and confidentiality agreement.

For all of the above stated reasons, it is clear that plaintiff has a substantial likelihood of success on the merits as to its claims for breach of the confidentiality/non-compete agreements of certain defendants.

Utah Code Ann. Section 13-11a-3, prohibits persons and companies from engaging in

deceptive trade practices. Defendants have engaged in many of the deceptive trade practices enumerated in section 3, including among other things:

    a.    the passing off of their goods and services as those of Plaintiffs;

    b.    the causing of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods their goods or services;

    c.    the causing of confusion or misunderstanding as to their affiliation, connection, association with, or certification by or with Plaintiffs;

    d.    the disparagement of Plaintiffs' goods, services, or business by false or misleading representations of fact.

Pursuant to Utah Code Ann. 13-1 1a-4(2), Defendants are liable to Plaintiffs and many of the acts alleged in the various affidavits would fall under the prohibitions of this statute. For example, Defendants' materials and program is basically indistinguishable from Plaintiffs', using the same format, materials, business procedures, and even going to the same geographic and academic locations and advertising in the same markets. Further Defendants are using confusingly similar names in order lure Plaintiffs' customers to its business.

For these reasons, examination of each of the four requirements for the issuance of temporary restraining order compels the conclusion that a temporary restraining order should be entered against Defendants. Plaintiffs have demonstrated that it will successfully succeed on the merits of its claims. Plaintiffs further submit that the clear, immediate, and irreparable harm it presently suffers as a result of Defendants' misappropriation of trade secrets, use of deceptive

and unfair business practices and violation of copyright laws warrants a temporary restraining order. Moreover, the balance of hardships weighs heavily in favor of protecting Plaintiffs' trade secrets and the public from confusion in the marketplace. Finally, the requested temporary restraining order will further the public interest in enforcing state law and protecting trade secrets from blatant piracy.

### 5. *Ex Parte* Relief is Essential in this Action

Rule 65A(b)(1) of the Utah Rules of Civil Procedure permits the issuance of a temporary restraining order without prior notice to the Defendants. Moreover, courts have repeatedly recognized the need for *ex parte* temporary restraining orders in trade secret and copyright type cases. In this case, Defendants' business operations include flagrant, willful violations of state trade secret law, passing off, as well as unfair and deceptive business practices law. Defendants have the ability to make the evidence if their illegal activities disappear. Thus, given the substantial statutory remedies provided to plaintiffs if they prevail at trial against Defendants, a very real possibility exists that Defendants will attempt to destroy all of the misappropriated articles and all evidence of its illegal activities upon receiving notice of this action.

Plaintiffs submit that the clear, immediate, and irreparable harm it presently suffers as a result of Defendants' misappropriation of trade secrets, passing off of Plaintiffs materials as their own, as well the flagrant deceptive and unfair trade practices, warrants a temporary restraining order. Plaintiffs further submit that the risk that the misappropriated and copied articles themselves, along with all evidence of Defendants' wrongdoing, will be destroyed if notice is

given and warrants the issuance of an *ex parte* order under Rule 65A(b)(1) without prior notice to Sefendants. Only *ex parte* relief can protect crucial evidence during the pendency of this action, preserve the *status quo,* and ensure the Court's ability to provide Plaintiffs with an adequate final remedy. Plaintiffs therefore respectfully request that its motion for an *ex parte* temporary restraining order be granted.

Plaintiffs believe it is a proper situation for the immediate issuance of an *ex parte* injunctive order, prohibiting Defendants from using the Plaintiffs' products, ideas, materials, customer lists, plans, methods, or any variations thereon in publication, on web-sites, on the Internet or through e-mail connections, and prohibiting Defendants from removing, destroying or manipulating any paper and/or electronic data associated with the activities alleged by Plaintiffs in order to permit the Court to establish the true extent of damages and grant Plaintiffs' effective relief.

DATED this _26_ day of July, 2002.

OSBORNE & BARNHILL, P.C.

_____
Brian R. Barnhill
Attorneys for Plaintiffs

D:\Clients\BRB\Professional Nurse Development\Ivy Hall\Memo for TRO and PI.wpd