*cc: Hand delivered to Judge Jenkins*

Douglas B. Thayer (8109)
Hill, Johnson & Schmutz, LC.
3319 North University Ave.
Provo, Utah 84604
Telephone: (801) 375-6600
Attorneys for Defendants Matt Stoker,
Ivy Hall Academy Of Nursing Inc., Academy
Of Nursing Development and Academy Of Nurse Development

*FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH*
*AUG 12 2002*
*MARKUS B. ZIMMER, CLERK*
*BY _____ DEPUTY CLERK*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PROFESSIONAL NURSE DEVELOPMENT, INC., a Utah Corporation, ACADEMY OF NURSING, LLC., a Utah limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>MATT STOKER, IVY HALL ACADEMY OF NURSING, INC., a Utah Corporation, ACADEMY OF NURSING DEVELOPMENT and ACADEMY OF NURSE DEVELOPMENT,<br><br>Defendants. | MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION<br><br><br><br>Civil No. 2:02 CV 0767 BSJ |

The Defendants, by and through their counsel of record, hereby file this memorandum in opposition to Plaintiffs' motion for temporary restraining order and order to show cause re preliminary injunction. Plaintiffs motion for temporary restraining order and for preliminary injunction is without substance. Defendants are now forced to respond to Plaintiffs' assertions, and they will do so point by point. In looking at Plaintiffs' request for a temporary restraining order and/or injunction, it is <u>critical</u> for this Court to understand the nature of the business in



which Plaintiffs and Defendants are involved and how their businesses, as well as others in this industry, are generally run.

BACKGROUND FACTS:

The heart and soul of this industry consists of home study degrees offered by Excelsior College, ("Excelsior") a member of The University Of The State Of New York. (See Declaration of Nathan R. Finnigan, Director of Operations for Ivy Hall Academy, dated August 12, 2002 and marked as Exhibit A) Excelsior awards degrees in 31 programs at the associate and baccalaureate levels in business, liberal arts, nursing, and technology and master's-level degrees in liberal studies and nursing. (See Excelsior College School of Nursing Catalog, on inside cover, attached and marked as Exhibit B) As Mr. Mark Hansen states at paragraph 8 of his July 12, 2002 declaration in support of Plaintiffs' motion for temporary restraining order, "[b]oth PND [plaintiff Professional Nurse Development, Inc.] and Academy [plaintiff Academy Of Nursing, LLC] were began (sic) in an effort to provide quality nursing instruction to <u>supplement the home study degrees offered by Excelsior College</u>...." (emphasis added)

The focus of the industry in which the parties are involved is to aid students who are enrolled in the Excelsior home study degree programs, to learn the relevant Excelsior materials, meet the Excelsior curriculum requirements and to ultimately pass the Excelsior examinations. (See Exhibit A) Along with the parties to this action, there are numerous companies nationwide that provide such services, e.g., Medical Career Development Centers, Inc. ("MCDC"), (See MCDC materials attached and marked collectively as Exhibit C); Professional Development Systems, School of Health Sciences, *RN Fast Track Program.*, ("PDS") (See Professional Development Systems web site pages attached and marked collectively as Exhibit D), etc. At the PDS web site they note "we have been training nurses <u>since 1990</u>. In fact, year after year, we

train more nurses than any other school in California and we have over 2,000 students pursuing their nursing degree and licensure to become Registered Nurses in our *RN Fast Tracking Program*. Students actually earn their degree through Excelsior College, ... by taking a series of written and clinical performance examinations."(emphasis added) (See Exhibit D)

Contrary to what Plaintiffs would like this court to believe, the core of the parties' programs, as well as that of others in this industry, is the Excelsior material and the Excelsior curriculum requirements. In fact, as will be shown below, the Plaintiffs have copied much Excelsior material and are attempting to pass it off as their own. To claim the Defendants have taken material which the Plaintiffs have actually taken from Excelsior is ludicrous.

In addition to basing their programs around the Excelsior materials, Excelsior curriculum and Excelsior graduation requirements, the parties also use third-party publishing companies to produce study guides and workbooks for their students. For example, the Defendants have agreements with a national publishing company to produce the study guides and workbooks necessary for their students to successfully complete the Excelsior requirements. (Exhibit A) It is the Defendants belief that the Plaintiffs only register their students to use a national publishing company's "on-line" student study guide and then, in violation of copyright law, Plaintiffs make xerox copies of the "hard-copy" study guides to be distributed for use by their students.

ARGUMENT:

The Plaintiffs' assert, at page four of their complaint, that "[f]or more than ten years, Mark Hansen and Aaron Hansen have worked as registered nurses and through their work identified a need within the industry for a strong expedited nursing program which could offer quality education at a reasonable cost without the lengthy admissions process for state university

nursing programs...." This is simply <u>not</u> a new idea nor an original idea of the Plaintiffs! As noted above, PDS has been <u>doing it since 1990</u>. (Exhibit D and Exhibit A)

As an aside, while Plaintiffs allege that "Mark Hansen and Aaron Hansen" "have worked as registered nurses" "[f]or more than ten years", (Plaintiffs' Complaint at paragraph 11) a review of the Utah Division Of Occupational and Professional Licensing, ("DOPL") records reflects that only two Mark Hansens are registered nurses in Utah; one of them was originally licensed in 1997 and the other was originally licensed in 1998. (See copies of DOPL web site pages marked collectively as Exhibit E) The DOPL records, as of approximately one month ago, reflect that there is not a registered nurse in Utah by the name of Aaron Hansen, or any derivation of the name Aaron Hansen.

A copyright infringement claim <u>requires</u> that a Plaintiff establish both: (1) that she possesses a valid copyright; and (2) copying by defendants of protected components of the copyrighted material. Country Kids' N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 (10th Cir. 1996), citing Feist Publications, Inc. v. Rural Telephone Service, Co., 499 U.S. 340, 361, 133 L. Ed. 2d 358, 111 S. Ct. 1282 (1991); Gates Rubber Co. v. Bando Chemical Industries, Limited, 9 F.3d 823, 831 (10th Cir. 1993); Autoskill v. National Educational Support Systems, Inc., 994 F.2d 1476, 1487 (10th Cir. 1993), cert. denied, 510 U.S. 916, 126 L. Ed. 2d 254, 114 S. Ct. 307 (1993).

The second prong of the test involves two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's work and 2) whether, as a mixed issue of fact and law, those elements of the work that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable. 4 Melville B. Nimmer, Nimmer on Copyright § 13.01 [B], at 13-8 to 13-15.

At page 6 of Plaintiffs' complaint, starting at paragraph 22, items a through l, the Plaintiffs list a number of things for which they claim they have "registration pending" and that they "have completed the applications and submitted copies to the United States Copyright Office". The Plaintiffs have attached to their complaint, copies of the materials for which they claim to have registrations pending and they are listed as Exhibits 1 through 12, respectively. It is important for the Court to note that many of these Exhibits, which are hard-copies of web pages and copies of applications, state that the "work" was first published on January 2, 2002, even though the domain name for Plaintiff Academy of Nursing was not registered until April 25, 2002 and the domain name for Professional Nurse Development was not registered until January 21, 2002. (See attached copies of domain name registrations for Academy of Nursing and Professional Nurse Development, marked collectively as Exhibit F) In fact, Plaintiff Academy of Nursing, LLC, did not register with the State of Utah Department of Commerce until June 7, 2002. (See attached copy of Utah Department of Commerce web page reflecting registration date for Academy of Nursing, LLC, marked as Exhibit G) How can a web site that was not registered until, at the earliest, January 21, 2002, publish web pages as of January 2, 2002?

Many of the hard-copy web pages submitted by the Plaintiffs note the name of "The College of Professional Nurse Development" at the top of the web page. The Plaintiffs are aware that no such entity is involved in this litigation, and if it were, the use of the designation "College" in its title requires that such an institution actually "confer[] a standard college degree as one of its credentials." Neither of the Plaintiffs can actually confer a standard college degree as one of its credentials and therefore the use of the title "College" is a clear violation of the Utah Postsecondary Proprietary School Act And Rules, Rule 8.5. It is unclear to these

Defendants whose web pages are actually attached to Plaintiffs' complaint and it is also unclear to these Defendants when the applications for registration were actually submitted to the Copyright Office. The Court should note that the applications for registration of copyright submitted by the Plaintiffs as Exhibits 1 through 12 in this case, do <u>not</u> reflect a date on which they were <u>actually submitted</u> to the copyright office. However, it is clear that on May 2, 2002, the Ivy Hall Academy of Nursing Inc., after determining that certain names were not registered with the State of Utah, registered the following names with the State of Utah as DBA's: Utah Academy of Nursing, Utah Nursing Academy, Academy of Nursing Development and Academy of Nurse Development. (See attached copies of DBA registrations marked collectively as Exhibit H.  It should also be noted that Ivy Hall Academy of Nursing has not used these DBA's in any way since it registered them with the State of Utah and is not doing business under any name other then Ivy Hall Academy of Nursing)

    Much of the material Plaintiffs claim is "wholly original" to them, was taken verbatim out of the Excelsior materials. For example, Exhibit 4 of Plaintiffs' complaint is their "Student Information Bulletin" and the application for copyright states the type of authorship of this work is "text" and is a "compilation of terms or data." The application for copyright explicitly states that "[a] compilation of previously published or public domain material must be registered using a standard Form TX." (See Plaintiffs' Exhibit 4) The Plaintiffs make no mention of this material being previously published and/or that it is public domain material. However, a review of Plaintiffs' Exhibit 4, compared to the Excelsior College School of Nursing Catalog, (Defendants' Exhibit B) along with the Excelsior College Examination Descriptions, (a copy of which is attached and marked as Exhibit I) shows very clearly that the vast majority of the

material in Plaintiffs' Student Information Bulletin came straight out of the Excelsior documents word for word!

"It is axiomatic that material in the public domain is not protected by copyright, even when incorporated into a copyrighted work." Autoskill, 994 F.2d at 1494, citing 4 Nimmer § 13.03 [F][4], at 13-98. Generalized themes and ideas lie in the public domain and are not copyrightable. Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49 (2d Cir. 1936), cert. denied, 298 U.S. 669, 80 L. Ed. 1392, 56 S. Ct. 835 (1935). Even where actual copying is proven, liability for copyright infringement can only attach where protected elements of a copyrighted work are copied. Country Kids, 77 F.3d at 1284. "Unprotectable elements of a program, even if copied verbatim, cannot serve as the basis for ultimate liability for copyright infringement." Gates Rubber, 9 F.3d at 833, citing Baker v. Selden, 101 U.S. 99, 101-03, 25 L. Ed. 841 (1879). "The mere fact that a work is copyrighted does not mean that every element of the work may be protected." Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 348, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991). A court is consequently required to find substantial similarity between those aspects of Plaintiff's work which are legally protectable and the Defendants' works. Country Kids, 77 F.3d at 1284; Autoskill, 994 F.2d at 1490.

Beginning on the fourth page of Exhibit 4, which is the second page of Plaintiffs' Student Information Bulletin, Defendants will take the court through the document page by page and provide page references from Exhibits B and H, that show the exact quotes Plaintiffs lifted from the Excelsior College materials. Beginning with the fourth page of Exhibit 4, the Plaintiffs' Mission Statement quotes from the Excelsior College School of Nursing Catalog, ("Excelsior catalog") Mission Statement, on the inside cover page, (Exhibit B) as follows: "what individuals know is more important than where or how they have learned it." At the fifth page of Exhibit 4

the goals section is taken essentially verbatim from the Excelsior catalog at page 15, (Exhibit B) specifically goals #2, #6, #9, #10 and #12. Also on the fifth page of Exhibit 4, the "RN PROGRAM" is taken almost verbatim out of the Excelsior catalog, (Exhibit B) page 18, under the heading "Beliefs About the Practice of Associate Degree Nursing." The remaining portion of the fifth page of Exhibit 4 is taken almost verbatim out of the Excelsior catalog (Exhibit B) at pages 18 and 19, under the heading "Educational Outcomes." At the sixth page of Exhibit 4, the text at the top of the page dealing with graduation credits and requirements is taken almost verbatim from the Excelsior catalog (Exhibit B) at page 21, under the heading "Minimum Academic Average" and at page 22, under the heading "Associate Degree Requirements: General Education And Nursing." The two charts on the sixth page of Exhibit 4 are taken directly from the Excelsior catalog (Exhibit B) at pages 23 and 24. The charts in Plaintiffs' document are simply placed in a different direction then the charts in the Excelsior catalog. The seventh page of Exhibit 4 simply puts forth material that is required by law in Utah pursuant to the Utah Postsecondary Proprietary School Act ("UPPSA") that is actually cited by the Plaintiffs on the eighth page of Exhibit 4 under the heading "Graduation."

The material on the seventh page of Exhibit 4 is mandated by the UPPSA and Rules, specifically Rules 8.3 et seq., including the graph used by Plaintiff's on the ninth page of Exhibit 4. (See attached copy of UPPSA and Rules, dated 8/7/00, marked as Exhibit J) On the eighth page of Exhibit 4 Plainitffs' quote their graduation requirements from UPPSA 4.3, and their time limit and academic average comes from the Excelsior catalog at page 21. The ninth page of Exhibit 4 under "Refund Policy" is mandated by the UPPSA and Rules, particularly Rule 8.3 et seq. The charting or graphing of nonrefundable items is taken directly from UPPSA as discussed above. The tenth and eleventh pages of Exhibit 4 deal with the "RN PROGRAM COURSE

DESCRIPTION" and come directly out of the Excelsior catalog (Exhibit B) at pages 27 and 28, and also out of Exhibit I, at pages 6, 7 and 13. Finally, the last page of Exhibit 4, i.e., the "Enrollment Agreement" is essentially mandated in content by the UPPSA and Rules. A copy of the UPPSA and Rules section dealing with Enrollment Agreements is attached and marked as Exhibit K) The scenes a faire doctrine also excludes from protection those elements of a program that have been dictated by external factors. See Plains Cotton Co-op Ass'n. v. Goodpasture Computer Serv., Inc., 807 F.2d 1256, 1262 (5th Cir.), cert. denied, 484 U.S. 821, 98 L. Ed. 2d 42, 108 S. Ct. 80 (1987); Apple Computer, 799 F. Supp. at 1022-26.

It is absolutely clear, that Plaintiffs' Exhibit 4 is taken, almost entirely, from the Excelsior materials which are in the public domain, are the property of third-parties not involved in this litigation, and/or have been dictated by external factors, i.e., the State of Utah.

Throughout Plaintiffs' complaint they make conclusory, unsupported allegations, e.g., Defendants' allegedly took it's "instructional material, lesson plan, pricing structures, placement strategies [even though the Defendants do not provide placement opportunities at this time] and "marketing materials for their own use." Plaintiffs' complaint is bereft of any supporting affidavits and/or any other evidence to warrant a temporary restraining order and/or an injunction. For example, at paragraphs 19, 21 and 26 of Plaintiffs' complaint they simply give the court a laundry list of "bad acts" the Defendants are alleged to have committed, with no reference to any supporting facts or affidavits.

At pages eight and nine of their complaint, Plaintiffs allege that "Defendants copyright violations track the entire "method" of Plaintiffs' business development and end-product programs for placement of students." First, it should be noted that Defendants do not at this time place students anywhere! (See Exhibit A) The Plaintiffs then continue on in paragraph 28 of

their complaint to lay out their "methodology" for doing business. They claim they run advertisements in local newspapers. The Defendants have never run advertisements in a local newspaper! (See Exhibit A) Plaintiffs claim they run advertisements on community college campuses. Defendants do run ads on community college campuses but they have never seen such any such ad run by the Plaintiffs. (See Exhibit A) Plaintiffs claim they invite prospective students to attend free seminars. Defendants do not have group seminars! They tried it once and found it was not productive. Defendants meet with prospective students one-on-one. (See Exhibit A) Plaintiffs claim they provide classroom instruction by "qualified instructors" with written materials for students to study. Defendants dispute that the Plaintiffs use "qualified instructors" but do acknowledge the use of their own qualified instructors, as does every other business in this industry. (See Exhibit A) Plaintiffs claim they provide a place for students to take the Excelsior exams. So do the Defendants and everyone else in the industry. (See Exhibit A) Plaintiffs claim they provide staffing to their students. Defendants do not provide staffing assistance for its students at this time. (See Exhibit A) The Defendants have not copied Plaintiffs' "methods" and any similarity in what the Defendants do in providing services to students is fundamental to the nature of their business and not anything new or original created by the Plaintiffs. (Exhibit A)

At pages nine, ten and eleven of their complaint, and then again at pages three, four and five of their memorandum in support of their motion for a temporary restraining order, Plaintiffs cite the only specific examples of alleged infringement in all of their pleadings. As a specific example of alleged copyright infringement, Plaintiffs claim that because Defendants cite the Bureau of Labor Statistics for the proposition that employment for RNs will grow faster than any other occupation between now and 2008, Defendants must have infringed on their copyrighted

material. It is obvious that Plaintiffs cannot copyright public domain statistics put out by the Bureau of Labor Statistics, and second, the Defendants' brochure, which is Exhibit 13B of Plaintiffs' complaint, notes, right after their quote, that the source for the Bureau of Labor Statistics which they are using comes from the "(American Health Care Association 2001)" (Also see Exhibit A)

Plaintiffs next assert that in Defendants "2nd ... Handout", that because the Defendants refer generally to the Bureau of Labor Statistics again, that they have infringed on copyrighted material. The allegation is absurd and outrageous! It is clear from even a cursory exam of the material quoted by the Plaintiffs that there is not, nor can there be, infringement with regard to the public domain material being used by the Defendants. Attached to this opposition, and marked collectively as Exhibit L are copies of other web sites that state "the U.S. Bureau of Labor Statistics projects that employment for registered nurses will grow faster than the average for all occupations through 2008."

Second, the Plaintiffs allege that they use the phrase "Dramatically increase your income potential with your RN degree and do it around your work schedule." This allegation is misleading and inaccurate. What Plaintiffs Exhibit 14A *actually* reflects is a bullet item that says "Dramatically increase your income potentia [or potential]" depending on which advertisement you read. Then another bullet item appears below it and it reads "Be part of the growing demand in healthcare." Finally, the third bullet on their advertisement reads "Do it around your schedule." This is clearly not what is represented in paragraph b, at page 4 of Plaintiffs Memorandum In Support. The phrase quoted by the Plaintiffs, i.e., "with your RN degree and" does not appear in their Exhibit 14A. The Plaintiffs attempt to mislead this court should not be

surprising to anyone in light of the other flagrant and blatantly untrue assertions they make throughout their complaint.

On the Defendants' brochure, i.e., Exhibit 14B to Plaintiffs Complaint, which has an entirely different look and feel then the Plaintiffs advertisement, i.e., Exhibit 14A, it states, *in one sentence* "Dramatically increase your income potential with your RN degree and do it around your work schedule!!" The phrase "dramatically increase your income potential" is not new or original to the Plaintiffs. For example, attached and marked as Exhibit L are three pages from different web sites that advertise how to "dramatically increase your income potential" or "dramatically increase your income." The idea that Defendants have somehow infringed on copyrighted material by making such a statement is, again, absurd.

The Plaintiffs next appear to attempt, at paragraph c of page 4 of their Memorandum In Support, to allege that somehow their "Mission Statement" and the Defendants "Enrollee Information Packet" are so similar that copyright infringement has taken place. Again, the Plaintiffs have failed to establish that the Defendants had access to their material and that the material is in fact, protectable. A comparison of the two quotations clearly shows their dissimilarity in construction. The same is true for Plaintiffs allegation at paragraph d of page 5 of their Memorandum In Support. The remaining portions of Plaintiffs Memorandum In Support offer no further examples of alleged copyright violations or any other type of violation. The Plaintiffs memorandum speaks in conclusory statements based on opinions, hearsay, etc. and fails to establish any facts that would warrant judgment at trial, let alone merit a temporary restraining order and/or a preliminary injunction.

Beginning at page 12 of their complaint, Plaintiffs leave the few specific allegations described above and revert back to their broad conclusory allegations unsupported and/or

unspecific as to how the alleged infringement has occurred. For example, at paragraph 31 of their complaint the Plaintiffs allege that "[a] review of the remaining materials illustrates further copying or "write around" by Defendants of letters, graphics, ideas, content, structure, methods, etc., in some cases only changing the order of appearance slightly, but in all cases stealing Plaintiffs materials which were developed, refined, tested, modified, etc., by Plaintiffs. A clear example of this is the Frequently Asked Questions materials attached as Exhibit 15A and 15B." It has already been pointed out in their Exhibit 4 that the Plaintiffs have taken, verbatim and/or nearly verbatim, large amounts of third-party materials, i.e., Excelsior College materials that do not belong to any of the parties in this lawsuit, and claim it for their own. However, an examination of Exhibits 15A and 15B, shows only that each party has responded to "frequently asked questions" by prospective students. Plaintiffs' Exhibit 15A includes much of the material taken directly out of the Excelsior College Nursing Catalog discussed above. Many businesses have lists of frequently asked questions, because these questions are frequently asked! Attached and marked collectively as Exhibit N, are three sets of "frequently asked questions" that deal with many of the same subjects as those addressed by Plaintiffs.

Plaintiffs next broad, conclusory assertion, at paragraph 32 of their complaint, alleges that Defendants' New Enrollee Information Packet, marked as Plaintiffs' Exhibit 17 is simply a write around of their material and that it has the "look and feel" of Plaintiffs' Exhibit 3. Plaintiffs give no specific examples of how it is alleged to be a "write around", but a careful review of these exhibits clearly shows there is no similar "look and feel" of Defendants' material to Plaintiffs'. In fact, the look and feel is quite dissimilar. What might be common to both is the subject matter of the material, since both deal with the same Excelsior courses, Excelsior requirements, State of Utah Postsecondary Proprietary School Act requirements, etc.

In paragraph 33 of their complaint the Plaintiffs next claim that Defendants' web site pages write around their own original materials, again, without describing for this court how the alleged "write around" has occurred. Again, just a broad conclusory allegation with no supporting evidence or supporting argument.

Finally, at paragraph 34 Defendants again make the claim that their ads have been somehow obtained by Defendants and the content and material in their ads has been used by the Defendants as their own. In support of that broad allegation the Plaintiffs attach a copy of their ad and a copy of the Defendants ad as Exhibit 19. This allegation has been dealt with in detail above and need not be discussed again. (Also see Exhibit A) Suffice it to say, the ads speak for themselves!

CONCLUSION:

It should be clear to the Court that the Plaintiffs have not even come close to making a showing sufficient to warrant a judgment, let alone a temporary restraining order and/or a preliminary injunction. They are not likely to succeed on the merits of their claims, they are not in danger of immediate and/or irreparable harm - quite the opposite. If this restraining order and/or injunction were to issue, it would put Defendants out of business because Plaintiffs claim that everything Defendants do came from them. At a minimum, if the Court were to make a finding on this motion, an evidentiary hearing must be held and the Plaintiffs' allegations must be exposed for the complete fabrications that they are.

DATED this 12th day of August 2002.

                                                  Hill, Johnson & Schmutz

                                                  By _____
                                                  Douglas B. Thayer
                                                  Attorneys for Defendants Matt Stoker,
                                                  Ivy Hall Academy Of Nursing, Inc.,
                                                  Academy Of Nursing Development and
                                                  Academy Of Nurse Development

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of August 2002, he hand-delivered a true and correct copy of the foregoing Memorandum In Opposition To Plaintiffs' Motion For Temporary Restraining Order And Order To Show Cause Re Preliminary Injunction to be delivered to the following:

Brian Barnhill
Osborne & Barnhill
11576 South State Street, Bldg #204
Draper, Utah 84020

Sent Via:
\_\_X\_\_ Hand -Delivery
_____ Facsimile
_____ Mailed (postage pre-paid)

_____
Douglas B. Thayer

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.